Chief Justice ROBERTS delivered the opinion of the Court.
Article II of the Constitution requires that the President obtain "the Advice and Consent of the Senate" before appointing "Officers of the United States." § 2, cl. 2. Given this provision, the responsibilities of an office requiring Presidential appointment and Senate confirmation-known as a "PAS" office-may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement. Congress has long accounted for this reality by authorizing the President to direct certain officials to temporarily carry out the duties of a vacant PAS office in an acting capacity, without Senate confirmation.
The Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345 et seq., is the latest version of that authorization. Section 3345(a) of the FVRA authorizes three classes of Government officials to become acting officers. The general rule is that the first assistant to a vacant office *935 shall become the acting officer. The President may override that default rule by directing either a person serving in a different PAS office or a senior employee within the relevant agency to become the acting officer instead.
The FVRA, however, prohibits certain persons from serving as acting officers if the President has nominated them to fill the vacant office permanently. The question presented is whether that limitation applies only to first assistants who have automatically assumed acting duties, or whether it also applies to PAS officers and senior employees serving as acting officers at the President's behest. We hold that it applies to all three categories of acting officers.
I
A
The Senate's advice and consent power is a critical "structural safeguard [ ] of the constitutional scheme." Edmond v. United States, 520 U.S. 651, 659, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997). The Framers envisioned it as "an excellent check upon a spirit of favoritism in the President" and a guard against "the appointment of unfit characters ... from family connection, from personal attachment, or from a view to popularity." The Federalist No. 76, p. 457 (C. Rossiter ed. 1961) (A. Hamilton). The constitutional process of Presidential appointment and Senate confirmation, however, can take time: The President may not promptly settle on a nominee to fill an office; the Senate may be unable, or unwilling, to speedily confirm the nominee once submitted. Yet neither may desire to see the duties of the vacant office go unperformed in the interim.
Since President Washington's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant PAS office without first obtaining Senate approval. The earliest statutes authorized the appointment of "any person or persons" to fill specific vacancies in the Departments of State, Treasury, and War. Act of May 8, 1792, ch. 37, § 8, 1 Stat. 281. Congress at first allowed acting officers to serve until the permanent officeholder could resume his duties or a successor was appointed, ibid., but soon imposed a six-month limit on acting service, Act of Feb. 13, 1795, ch. 21, 1 Stat. 415.
Congress revisited the issue in the 1860s, ultimately passing the Vacancies Act of 1868. The Vacancies Act expanded the number of PAS offices that the President could fill with acting officers. Act of July 23, 1868, ch. 227, 15 Stat. 168; see also Act of Feb. 20, 1863, ch. 45, 12 Stat. 656. With that expansion came new constraints. The authority to appoint "any person or persons" as an acting officer gave way to a default rule that the "first or sole assistant ... shall" perform that function, with an exception allowing the President to instead fill the post with a person already serving in a PAS office. 15 Stat. 168. And rather than six months of acting service, the Vacancies Act generally authorized only ten days. Ibid. That narrow window of acting service was later lengthened to 30 days. Act of Feb. 6, 1891, ch. 113, 26 Stat. 733.
During the 1970s and 1980s, interbranch conflict arose over the Vacancies Act. The Department of Justice took the position that, in many instances, the head of an executive agency had independent authority apart from the Vacancies Act to temporarily fill vacant offices. The Comptroller General disagreed, arguing that the Act was the exclusive authority for temporarily filling vacancies in executive agencies. See M. Rosenberg, Congressional Research Service Report for Congress, The *936 New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative 2-4 (1998) (Rosenberg). Congress then amended the Vacancies Act to clarify that it applies to such agencies, while at the same time lengthening the term of permissible acting service to 120 days, with a tolling period while a nomination is pending. Id., at 3; see Presidential Transitions Effectiveness Act, § 7, 102 Stat. 988.
But tensions did not ease. By 1998, approximately 20 percent of PAS offices in executive agencies were occupied by "temporary designees, most of whom had served beyond the 120-day limitation period ... without presidential submissions of nominations." Rosenberg 1. These acting officers filled high-level positions, sometimes in obvious contravention of the Senate's wishes. One, for instance, was brought in from outside Government to serve as Acting Assistant Attorney General for the Civil Rights Division of the Justice Department, immediately after the Senate refused to confirm him for that very office. Ibid. ; see M. Rosenberg, Congressional Research Service, Validity of Designation of Bill Lann Lee as Acting Assistant Attorney General for Civil Rights 1-3 (1998). Perceiving a threat to the Senate's advice and consent power, see Rosenberg 6, Congress acted again. In 1998, it replaced the Vacancies Act with the FVRA.
Section 3345(a) of the FVRA permits three categories of Government officials to perform acting service in a vacant PAS office. Subsection (a)(1) prescribes a general rule: If a person serving in a PAS office dies, resigns, or is otherwise unable to perform his duties, the first assistant to that office "shall perform" the office's "functions and duties ... temporarily in an acting capacity."
The next two paragraphs of § 3345(a) identify alternatives. Subsection (a)(2) provides that "notwithstanding paragraph (1)," the President "may direct a person" who already serves in a PAS office to "perform the functions and duties of the vacant office temporarily in an acting capacity." Subsection (a)(3) adds that "notwithstanding paragraph (1)," the President "may direct" a person to perform acting duties if the person served in a senior position in the relevant agency for at least 90 days in the 365-day period preceding the vacancy.[1]
Section 3345 also makes certain individuals ineligible for acting service. Subsection (b)(1) states: "Notwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section" if the President nominates him for the vacant PAS office and, during the 365-day period preceding the vacancy, the individual "did not serve in the position of first assistant" to that office or "served in [that] position ... for less than 90 days." Subsection (b)(2) creates an exception to this prohibition, providing that "[p]aragraph (1) shall not apply to any person" serving in a first assistant position that itself requires the Senate's advice and consent.
Other sections of the FVRA establish time limits on acting service and penalties for noncompliance. In most cases, the statute permits acting service for "210 days beginning on the date the vacancy occurs"; tolls that time limit while a nomination is pending; and starts a new 210-day clock if the nomination is "rejected, withdrawn, or returned." §§ 3346(a)-(b)(1). Upon a second nomination, the time limit tolls once more, and an acting officer can serve an additional 210 days if the second nomination proves unsuccessful.
*937 § 3346(b)(2). The FVRA ensures compliance by providing that, in general, "any function or duty of a vacant office" performed by a person not properly serving under the statute "shall have no force or effect." § 3348(d).
B
The National Labor Relations Board (NLRB or Board) is charged with administering the National Labor Relations Act. By statute, its general counsel must be appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(d).
In June 2010, the NLRB's general counsel-who had been serving with Senate confirmation-resigned. The President directed Lafe Solomon to serve temporarily as the NLRB's acting general counsel, citing the FVRA as the basis for the appointment. See Memorandum from President Barack Obama to L. Solomon (June 18, 2010). Solomon satisfied the requirements for acting service under subsection (a)(3) of the FVRA because he had spent the previous ten years in the senior position of Director of the NLRB's Office of Representation Appeals.
The President had bigger plans for Solomon than acting service. On January 5, 2011, he nominated Solomon to serve as the NLRB's general counsel on a permanent basis. The Senate had other ideas. That body did not act upon the nomination during the 112th Congress, so it was returned to the President when the legislative session expired. 159 Cong. Rec. S17 (Jan. 3, 2013). The President resubmitted Solomon's name for consideration in the spring of 2013, id., at S3884 (May 23, 2013), but to no avail. The President ultimately withdrew Solomon's nomination and put forward a new candidate, whom the Senate confirmed on October 29, 2013. Id., at S7635. Throughout this entire period, Solomon served as the NLRB's acting general counsel.
Solomon's responsibilities included exercising "final authority" to issue complaints alleging unfair labor practices. 29 U.S.C. §§ 153(d), 160(b). In January 2013, an NLRB Regional Director, exercising authority on Solomon's behalf, issued a complaint alleging that respondent SW General, Inc.-a company that provides ambulance services-had improperly failed to pay certain bonuses to long-term employees. An Administrative Law Judge concluded that SW General had committed unfair labor practices, and the NLRB agreed. 360 N.L.R.B. No. 109 (2014).
SW General filed a petition for review in the United States Court of Appeals for the District of Columbia Circuit. It argued that the unfair labor practices complaint was invalid because, under subsection (b)(1) of the FVRA, Solomon could not legally perform the duties of general counsel after having been nominated to fill that position. The NLRB defended Solomon's actions. It contended that subsection (b)(1) applies only to first assistants who automatically assume acting duties under subsection (a)(1), not to acting officers who, like Solomon, serve under (a)(2) or (a)(3).
The Court of Appeals granted SW General's petition for review and vacated the Board's order. It reasoned that "the text of subsection (b)(1) squarely supports" the conclusion that the provision's restriction on nominees serving as acting officers "applies to all acting officers, no matter whether they serve pursuant to subsection (a)(1), (a)(2) or (a)(3)." 796 F.3d 67, 78 (C.A.D.C.2015). As a result, Solomon became "ineligible to serve as Acting General Counsel once the President nominated him *938 to be General Counsel." Id., at 72.[2] We granted certiorari, 579 U.S. ----, 136 S.Ct. 2489, 195 L.Ed.2d 822 (2016), and now affirm.
II
Subsection (b)(1) of the FVRA prevents a person who has been nominated for a vacant PAS office from performing the duties of that office in an acting capacity. In full, it states:
"(1) Notwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section, if-
(A) during the 365-day period preceding the date of the death, resignation, or beginning of inability to serve, such person-
(i) did not serve in the position of first assistant to the office of such officer; or
(ii) served in the position of first assistant to the office of such officer for less than 90 days; and
(B) the President submits a nomination of such person to the Senate for appointment to such office."
Subsection (b)(2) adds that "[p]aragraph (1) shall not apply" to a person serving in a first assistant position that itself requires the advice and consent of the Senate.
We conclude that the prohibition in subsection (b)(1) applies to anyone performing acting service under the FVRA. It is not, as the Board contends, limited to first assistants performing acting service under subsection (a)(1). The text of the prohibition extends to any "person" who serves "as an acting officer ... under this section," not just to "first assistants" serving under subsection (a)(1). The phrase "[n]otwithstanding subsection (a)(1)" does not limit the reach of (b)(1), but instead clarifies that the prohibition applies even when it conflicts with the default rule that first assistants shall perform acting duties.
A
1
Our analysis of subsection (b)(1) begins with its text. Subsection (b)(1) applies to any "person" and prohibits service "as an acting officer for an office under this section." The key words are "person" and "section." They clearly indicate that (b)(1) applies to all acting officers under § 3345, regardless of the means of appointment.
Start with "person." The word has a naturally expansive meaning that can encompass anyone who performs acting duties under the FVRA. See Pfizer Inc. v. Government of India, 434 U.S. 308, 312, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978). Important as they may be, first assistants are not the only "person [s]" of the bunch.
Now add "under this section." The language clarifies that subsection (b)(1) applies to all persons serving under § 3345. Congress often drafts statutes with hierarchical *939 schemes-section, subsection, paragraph, and on down the line. See Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60-61, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004) ; L. Filson, The Legislative Drafter's Desk Reference 222 (1992). Congress used that structure in the FVRA and relied on it to make precise cross-references. When Congress wanted to refer only to a particular subsection or paragraph, it said so. See, e.g., § 3346(a)(2) ( "subsection (b)"); § 3346(b)(2) ("paragraph (1)"). But in (b)(1) Congress referred to the entire section- § 3345 -which subsumes all of the ways a person may become an acting officer.
The rest of the FVRA uses the pairing of "person" and "section" the same way. Section 3346, for example, specifies how long "the person serving as an acting officer as described under section 3345 may serve in the office." (Emphasis added.) And § 3348(d)(1) describes the consequences of noncompliance with the FVRA by referring to the actions "taken by any person who is not acting under section 3345, 3346, or 3347." (Emphasis added.) No one disputes that both provisions apply to anyone serving as an acting officer under the FVRA, not just first assistants serving under subsection (a)(1).
Had Congress intended subsection (b)(1) to apply only to first assistants acting under (a)(1), it could easily have chosen clearer language. Replacing "person" with "first assistant" would have done the trick. So too would replacing "under this section" with "under subsection (a)(1)." "The fact that [Congress] did not adopt [either] readily available and apparent alternative strongly supports" the conclusion that subsection (b)(1) applies to any acting officer appointed under any provision within § 3345. Knight v. Commissioner, 552 U.S. 181, 188, 128 S.Ct. 782, 169 L.Ed.2d 652 (2008).
The dependent clause at the beginning of subsection (b)(1)-"[n]otwithstanding subsection (a)(1)"-confirms that the prohibition on acting service applies even when it conflicts with the default rule that the first assistant shall perform acting duties. The ordinary meaning of "notwithstanding" is "in spite of," or "without prevention or obstruction from or by." Webster's Third New International Dictionary 1545 (1986); Black's Law Dictionary 1091 (7th ed. 1999) ("Despite; in spite of"). In statutes, the word "shows which provision prevails in the event of a clash." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 126-127 (2012). Subsection (a)(1) sets the rule that first assistants "shall perform" the vacant office's "functions and duties ... in an acting capacity." But the "notwithstanding" clause in subsection (b)(1) means that, even if a first assistant is serving as an acting officer under this statutory mandate, he must cease that service if the President nominates him to fill the vacant PAS office. That subsection (b)(1) also applies to acting officers serving at the President's behest is already clear from the broad text of the independent clause-they are all "person[s]" serving "under this section."
2
The Board takes a different view of the phrase "[n]otwithstanding subsection (a)(1)." It begins by noting that § 3345(a) uses three different subsections to "create three separate paths for becoming an acting official." Reply Brief 2. The prohibition in subsection (b)(1), the Board continues, "applies '[n]otwithstanding' only one of these subsections-'subsection (a)(1).' " Ibid. In the Board's view, singling out subsection (a)(1) carries a negative implication: that "Congress did not intend Subsection (b)(1) to override the alternative *940 mechanisms for acting service in Subsections (a)(2) and (a)(3)." Id., at 3.
We disagree. The Board relies on the "interpretive canon, expressio unius est exclusio alterius, 'expressing one item of [an] associated group or series excludes another left unmentioned.' " Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 80, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002) (quoting United States v. Vonn, 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) ). If a sign at the entrance to a zoo says "come see the elephant, lion, hippo, and giraffe," and a temporary sign is added saying "the giraffe is sick," you would reasonably assume that the others are in good health.
"The force of any negative implication, however, depends on context." Marx v. General Revenue Corp., 568 U.S. ----, ----, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013). The expressio unius canon applies only when "circumstances support[ ] a sensible inference that the term left out must have been meant to be excluded." Echazabal, 536 U.S., at 81, 122 S.Ct. 2045. A "notwithstanding" clause does not naturally give rise to such an inference; it just shows which of two or more provisions prevails in the event of a conflict. Such a clause confirms rather than constrains breadth. Singling out one potential conflict might suggest that Congress thought the conflict was particularly difficult to resolve, or was quite likely to arise. But doing so generally does not imply anything about other, unaddressed conflicts, much less that they should be resolved in the opposite manner.
Suppose a radio station announces: "We play your favorite hits from the '60s, '70s, and '80s. Notwithstanding the fact that we play hits from the '60s, we do not play music by British bands." You would not tune in expecting to hear the 1970s British band "The Clash" any more than the 1960s "Beatles." The station, after all, has announced that "we do not play music by British bands." The "notwithstanding" clause just establishes that this applies even to music from the '60s, when British bands were prominently featured on the charts. No one, however, would think the station singled out the '60s to convey implicitly that its categorical statement "we do not play music by British bands" actually did not apply to the '70s and '80s.
Drawing a negative inference from the "notwithstanding" clause in subsection (b)(1) is similarly inapt. Without that clause, subsection (b)(1) plainly would apply to all persons serving as acting officers under § 3345(a). Adding "notwithstanding subsection (a)(1)" makes sense because (a)(1) conflicts with (b)(1) in a unique manner. The former is mandatory and self-executing: The first assistant "shall perform" acting duties. The latter, by contrast, speaks to who "may not" be an acting officer. So if a vacancy arises and the President nominates the first assistant to fill the position, (a)(1) says the first assistant "shall perform" the duties of that office in an acting capacity while the nomination is pending, and (b)(1) says he "may not." The "notwithstanding" clause clarifies that the language of (a)(1) does not prevail if that conflict occurs.
Compare the mandatory language of subsection (a)(1) to (a)(2) and (a)(3). People appointed under those provisions are just as much acting officers as first assistants who assume the role. But there is no freestanding directive that they perform acting duties; subsections (a)(2) and (a)(3) just say that the President "may direct" them to do so. The natural inference, then, is that Congress left these provisions out of the "notwithstanding" clause because they are different from subsection (a)(1), not to exempt from the broad prohibition *941 in subsection (b)(1) those officers serving under (a)(2) and (a)(3).
Indeed, "notwithstanding" is used the same way in other parts of § 3345. Subsections (a)(2) and (a)(3) are each preceded by the phrase "notwithstanding paragraph (1)." The phrase recognizes that subsection (a)(1) is unique, and resolves the potential conflict between the mandatory "shall perform" in that provision and the permissive "may direct" in (a)(2) and (a)(3). But it implies nothing about other potential conflicts that may arise in the statutory scheme. In subsection (b)(1), it works the same way: The "notwithstanding" clause simply shows that (b)(1) overrides (a)(1), and nothing more.
Step back from the Board's focus on "notwithstanding" and another problem appears: Its interpretation of subsection (b)(1) makes a mess of (b)(2). Subsection (b)(2) specifies that (b)(1) "shall not apply to any person" if (A) that person "is serving as the first assistant"; (B) the first assistant position is itself a PAS office; and (C) "the Senate has approved the appointment of such person" to that office.
The Board's interpretation makes the first requirement superfluous, a result we typically try to avoid. Williams v. Taylor, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("It is ... a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)). If subsection (b)(1) applied only to first assistants, there would be no need to state the requirement in (b)(2)(A) that "such person is serving as the first assistant." The Board proposes that Congress did so for clarity, but the same could be said of most superfluous language.
The Board and the dissent counter that applying the prohibition in subsection (b)(1) to anyone performing acting service under § 3345(a) has its own problem: Doing so would also require applying it to § 3345(c)(1), which "would nullify" that provision. Reply Brief 9. The dissent deems this "no way to read a statute." Post, at 952.
We agree, and it is not the way we read it. Under our reading, subsection (b)(1) has no effect on (c)(1). Subsection (b)(1) addresses nominations generally, prohibiting any person who has been nominated to fill any vacant office from performing that office's duties in an acting capacity. Subsection (c)(1) speaks to a specific nomination scenario: When a person is "nominated by the President for reappointment for an additional term to the same office ... without a break in service." In this particular situation, the FVRA authorizes the nominee "to continue to serve in that office." § 3345(c). "[I]t is a commonplace of statutory construction that the specific governs the general." RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645, 132 S.Ct. 2065, 182 L.Ed.2d 967 (2012). The general prohibition on acting service by nominees yields to the more specific authorization allowing officers up for reappointment to remain at their posts. Applying subsection (b)(1) to § 3345(a) hardly compels a different result.
The text of subsection (b)(1) is clear: Subject to one narrow exception, it prohibits anyone who has been nominated to fill a vacant PAS office from performing the duties of that office in an acting capacity, regardless of whether the acting officer was appointed under subsection (a)(1), (a)(2), or (a)(3). It is not limited to first assistants who automatically assume acting duties under (a)(1).
B
The Board contends that legislative history, purpose, and post-enactment practice *942 uniformly show that subsection (b)(1) applies only to first assistants. The text is clear, so we need not consider this extra-textual evidence. See State Farm Fire & Casualty Co. v. United States ex rel. Rigsby, 580 U.S. ----, 137 S.Ct. 436, 196 L.Ed.2d 340 (2016). In any event, the Board's evidence is not compelling.
The Board argues that subsection (b)(1) was designed to serve a specific purpose: preventing the President from having his nominee serve as an acting officer by making him first assistant after (or right before) a vacancy arises. Brief for Petitioner 38. The original draft of the FVRA authorized first assistants and PAS officers to perform acting service. Subsection (b) of that draft provided that if a first assistant was nominated to fill the vacant office, he could not perform that office's duties in an acting capacity unless he had been the first assistant for at least 180 days before the vacancy. Several Senators thought the FVRA too restrictive. They asked to add senior agency officials to the list of potential acting officers and to shorten the 180-day length-of-service requirement in subsection (b). Their requests, the Board says, were granted; the final version of the FVRA included subsection (a)(3) for senior employees and shortened the length-of-service requirement to 90 days. There was no intent to extend the prohibition in subsection (b) beyond first assistants. Id., at 45-46.
The glitch in this argument is of course the text of subsection (b)(1). Congress did amend the statute to allow senior employees to become acting officers under subsection (a)(3). The only substantive change that was requested in (b) was to reduce the length-of-service requirement. Congress could have done that with a few tweaks to the original version of subsection (b). Instead, Congress went further: It also removed language that expressly limited subsection (b) to first assistants. And it added a provision-subsection (b)(2)-that makes sense only if (b)(1) applies to all acting officers. In short, Congress took a provision that explicitly applied only to first assistants and turned it into one that applies to all acting officers.
The Board protests that Congress would not have expanded the prohibition on nominees serving as acting officers after Senators asked to give the President more flexibility. See Brief for Petitioner 45-46. That certain Senators made specific demands, however, does not mean that they got exactly what they wanted. Passing a law often requires compromise, where even the most firm public demands bend to competing interests. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 93-94, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002). What Congress ultimately agrees on is the text that it enacts, not the preferences expressed by certain legislators. See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.").
Compromise is precisely what happened here: "[A] period of intense negotiations" took place after Senators demanded changes to the original draft of the FVRA, and the final bill was "a compromise measure." Rosenberg 9. The legislation as passed did expand the pool of individuals the President could appoint as acting officers, by adding senior employees in subsection (a)(3). But it also expanded the scope of the limitation on acting service in (b)(1), by dropping the language making (b)(1) applicable only to first assistants.
The Board contends that this compromise must not have happened because Senator Thompson, one of the sponsors of the FVRA, said that subsection (b)(1) "applies *943 only when the acting officer is the first assistant, and not when the acting officer is designated by the President pursuant to §§ 3345(a)(2) or 3345(a)(3)." 144 Cong. Rec. 27496 (1998). But Senator Byrd-the very next speaker-offered a contradictory account: A nominee may not "serve as an acting officer" if "he is not the first assistant" or "has been the first assistant for less than 90 ... days, and has not been confirmed for the position." Id., at 27498. This is a good example of why floor statements by individual legislators rank among the least illuminating forms of legislative history. See Milner v. Department of Navy, 562 U.S. 562, 572, 131 S.Ct. 1259, 179 L.Ed.2d 268 (2011) ("Those of us who make use of legislative history believe that clear evidence of congressional intent may illuminate ambiguous text. We will not take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language.").
Finally, the Board supports its interpretation with post-enactment practice. It notes that the Office of Legal Counsel and the Government Accountability Office have issued guidance construing subsection (b)(1) to apply only to first assistants. And three Presidents have, without congressional objection, submitted the nominations of 112 individuals who were serving as acting officers under subsections (a)(2) and (a)(3). The Board contends that this "historical practice" is entitled to "significant weight" because the FVRA "concern[s] the allocation of power between two elected branches of Government." Brief for Petitioner 49 (quoting NLRB v. Noel Canning, 573 U.S. ----, ---- - ----, 134 S.Ct. 2550, 2559, 189 L.Ed.2d 538 (2014) ; internal quotation marks omitted).
"[H]istorical practice" is too grand a title for the Board's evidence. The FVRA was not enacted until 1998, and the 112 nominations that the Board cites make up less than two percent of the thousands of nominations to positions in executive agencies that the Senate has considered in the years since its passage. Even the guidance documents the Board cites paid the matter little attention; both made conclusory statements about subsection (b)(1), with no analysis.
In this context, Congress's failure to speak up does not fairly imply that it has acquiesced in the Board's interpretation. See Zuber v. Allen, 396 U.S. 168, 185, n. 21, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969) ; Alexander v. Sandoval, 532 U.S. 275, 292, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). The Senate may not have noticed that certain nominees were serving as acting officers in violation of the FVRA, or it may have chosen not to reject a qualified candidate just to make a point about compliance with the statute. Either is at least as plausible as the theory that the Legislature's inaction reflects considered acceptance of the Executive's practice.
Our decision in Noel Canning -the chief opinion on which the Board relies-is a sharp contrast. That case dealt with the President's constitutional authority under the Recess Appointments Clause, an issue that has attracted intense attention and written analysis from Presidents, Attorneys General, and the Senate. 573 U.S., at ---- - ----, 134 S.Ct., at 2567-2573. The voluminous historical record dated back to "the beginning of the Republic," and included "thousands of intra-session recess appointments." Id., at ----, ----, 134 S.Ct., at 2560, 2562. That the chronicle of the Recess Appointments Clause weighed heavily in Noel Canning offers no support to the Board here.
III
Applying the FVRA to this case is straightforward. Solomon was appointed as acting general counsel under subsection *944 (a)(3). Once the President submitted his nomination to fill that position in a permanent capacity, subsection (b)(1) prohibited him from continuing his acting service. This does not mean that the duties of general counsel to the NLRB needed to go unperformed; the President could have appointed another person to serve as the acting officer in Solomon's place. And he had a wide array of individuals to choose from: any one of the approximately 250 senior NLRB employees or the hundreds of individuals in PAS positions throughout the Government. The President, however, did not do so, and Solomon's continued service violated the FVRA. Accordingly, the judgment of the Court of Appeals is affirmed.
It is so ordered.
APPENDIX
Section 3345 of the FVRA provides:
"(a) If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office-
(1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346 ;
(2) notwithstanding paragraph (1), the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346 ; or
(3) notwithstanding paragraph (1), the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346, if-
(A) during the 365-day period preceding the date of death, resignation, or beginning of inability to serve of the applicable officer, the officer or employee served in a position in such agency for not less than 90 days; and
(B) the rate of pay for the position described under subparagraph (A) is equal to or greater than the minimum rate of pay payable for a position at GS-15 of the General Schedule.
(b)(1) Notwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section, if-
(A) during the 365-day period preceding the date of the death, resignation, or beginning of inability to serve, such person-
(i) did not serve in the position of first assistant to the office of such officer; or
(ii) served in the position of first assistant to the office of such officer for less than 90 days; and
(B) the President submits a nomination of such person to the Senate for appointment to such office.
(2) Paragraph (1) shall not apply to any person if-
(A) such person is serving as the first assistant to the office of an officer described under subsection (a);
(B) the office of such first assistant is an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate; and *945 (C) the Senate has approved the appointment of such person to such office.
(c)(1) Notwithstanding subsection (a)(1), the President (and only the President) may direct an officer who is nominated by the President for reappointment for an office in an Executive department without a break in service, to continue to serve in that office subject to the time limitations in section 3346, until such time as the Senate has acted to confirm or reject the nomination, notwithstanding adjournment sine die.
(2) For purposes of this section and sections 3346, 3347, 3348, 3349, 3349a, and 3349d, the expiration of a term of office is an inability to perform the functions and duties of such office."

A senior position is one that has a rate of pay equal to or greater than the minimum rate "for a position at GS-15 of the General Schedule." 5 U.S.C. § 3345(a)(3)(B).

The FVRA exempts "the General Counsel of the National Labor Relations Board" from the general rule that actions taken in violation of the FVRA are void ab initio. 5 U.S.C. § 3348(e)(1). The Court of Appeals "assume[d] that section 3348(e)(1) renders the actions of an improperly serving Acting General Counsel voidable " and rejected the Board's argument against voiding Solomon's actions. 796 F.3d, at 79-82. The Board did not seek certiorari on this issue, so we do not consider it.
In addition, the unfair labor practice complaint in this case was issued after the Senate had returned Solomon's nomination the first time but before the President had renominated him to the same position. In the proceedings below, the Board did not argue that this timing made any difference, and the court assumed it had no bearing on the proper application of the FVRA to this case. Id., at 72, n. 3. We proceed on the same assumption.