18-2390
Bloom v. Azar

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2019

(Argued: October 7, 2019          Decided: September 23, 2020)

Docket No. 18-2390-cv

————————————————

JONATHAN A. BLOOM,

*Plaintiff-Appellant*,

v.

ALEX AZAR, SECRETARY, UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

*Defendant-Appellee.*[*]

————————————————

Before:

LIVINGSTON, *Chief Judge*, LEVAL and LOHIER, *Circuit Judges*.

Jonathan A. Bloom requested Medicare coverage to offset the costs associated with a device that he uses to treat his diabetes. The Medicare Appeals Council rejected three of Bloom's requests. When Bloom sought judicial review of the Appeals Council's adverse decisions, the United States District Court for the District of Vermont (Crawford, <u>C.J.</u>) dismissed Bloom's suit in part on the ground that the amounts involved in the challenged decisions fell below the amount-in-controversy requirement upon which the Medicare Act conditions judicial review, and that Bloom could not "aggregate[]" those amounts to cure that jurisdictional deficiency. 42 U.S.C.

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

§ 1395ff(b)(1)(E)(ii).  We **VACATE** the District Court's judgment and **REMAND** for proceedings consistent with this opinion.

JAMES PISTORINO (Debra M. Parrish, *on the brief*), Parrish Law Offices, Pittsburgh, PA, (Craig S. Nolan, Alexandrea L. Nelson, *on the brief*), Sheehey Furlong & Behm P.C., Burlington, VT, *for Plaintiff-Appellant* Jonathan A. Bloom.

MELISSA A.D. RANALDO, Assistant United States Attorney (Gregory L. Waples, Assistant United States Attorney, *on the brief*), *for* Christina E. Nolan, United States Attorney for the District of Vermont, Burlington, VT, *for Defendant-Appellee* Alex Azar, Secretary, United States Department of Health and Human Services.

LOHIER, *Circuit Judge*:

Jonathan A. Bloom is a Medicare beneficiary who uses a Continuous Glucose Monitoring device (CGM) to manage his Type I diabetes.  Since 2011 Bloom has regularly sought Medicare coverage to offset the costs associated with his CGM.  Three times between 2015 and 2017, the Medicare Appeals Council rejected Bloom's requests for coverage.  Bloom challenged the Appeals Council's adverse decisions in federal court, but the United States District Court for the District of Vermont (Crawford, C.J.) dismissed Bloom's suit in part.  It concluded that two of the three challenged decisions failed to meet the $1,500 amount-in-controversy threshold for federal court jurisdiction under the Medicare Act.  It also held that the Medicare Act did not permit

Bloom to cure the jurisdictional deficiency by "aggregat[ing]" the three separate amounts at issue in each decision. 42 U.S.C. § 1395ff(b)(1)(E)(ii). The question before us is whether the District Court erred in refusing to let Bloom aggregate his claims to satisfy the Act's amount-in-controversy requirement. For the reasons below, we **VACATE** the District Court's judgment and **REMAND** for proceedings consistent with this opinion.

## BACKGROUND

### I

Jonathan Bloom has been suffering from Type I diabetes for several decades. Bloom's diabetes is currently "brittle"—that is, particularly acute—which means that his blood-glucose levels fluctuate "rapidly" every day, sometimes even "unpredictably." Appellant's App'x 179. And unlike the many diabetics who can tell when their blood sugar is too low, Bloom suffers from "hypoglycemic unawareness," a condition that makes it is "impossible" for him "to detect when he is experiencing [] unexpected[ly] low" blood sugar. Id. As a result, Bloom has fallen unconscious into a diabetic coma on three separate occasions, two of which were "life threatening." Special App'x 4.

Since 2006 Bloom has attempted to better manage his diabetes by using a CGM—essentially a tiny sensor that he inserts just under his skin to actively monitor his blood-glucose levels. The CGM evaluates Bloom's blood sugar every five minutes, and "warn[s] him of drops in glucose that would lead to [further bouts of] unconsciousness." Supp. App'x 87. The device "has markedly improved [Bloom's] . . . quality of life and overall safety." Special App'x 4.

Bloom sought Medicare coverage for his CGM at least thirteen separate times. On three occasions, the Appeals Council denied Bloom's requests for coverage. First, in a decision dated November 13, 2015 (the M-15-1505 decision), the Appeals Council denied Bloom coverage for a thirty-day supply of disposable CGM sensors valued at $473. Second, in a decision dated February 24, 2016 (the M-15-4332 decision), the Appeals Council denied Bloom's claim for coverage of a CGM transmitter and two sets of disposable CGM sensors, which cost a total of $1,976. Finally, in a decision dated January 27, 2017 (the M-16-10554 decision), the Appeals Council denied Bloom coverage for a ninety-day supply of disposable CGM sensors, totaling $1,419. With respect to each denial, the Appeals Council concluded that

4

Bloom's CGM was "precautionary" in nature and thus failed to serve a "primary medical purpose." Appellant's App'x 73 (M-15-4332 decision), 185 (M-15-1505 decision), 270 (M-16-10554 decision).

II

In 2016 Bloom filed this lawsuit against the agency responsible for overseeing the Appeals Council, the Department of Health and Human Services (HHS), to challenge the three decisions denying coverage. See generally 42 U.S.C. §§ 1395ff(b)(1)(A), 1395ii, 405(g), 405(h). Bloom and HHS each eventually moved for judgment based on the pleadings and the administrative records. As relevant here, the District Court granted HHS's motion in part, concluding that it lacked jurisdiction to review the M-15-1505 and M-16-10554 decisions because the dollar amounts at issue in each of those decisions fell below the amount-in-controversy requirement upon which the Medicare Act conditions judicial review. The District Court also concluded that Bloom could not "aggregate[]" the amounts at issue in each decision to satisfy the amount-in-controversy threshold and cure the jurisdictional deficiency. Id. § 1395ff(b)(1)(E)(ii).

This appeal followed.

**DISCUSSION**

I

At issue in this appeal are the Appeals Council's M-15-1505 and M-16-10554 decisions denying Bloom's claims. There is no dispute that these decisions present common questions of law and fact. Bloom argues that the District Court had jurisdiction under 42 U.S.C. § 1395ff(b)(1)(E)(i) to review his challenges to those decisions because the aggregated amount of those claims indisputably exceeded $1,500. On de novo review, we agree. See United States v. Williams, 733 F.3d 448, 452 (2d Cir. 2013).

A

We begin with the language of the Medicare Act, which contains two provisions that are directly relevant to our resolution of this appeal.

The first provision states that "[a] hearing . . . shall not be available to an individual . . . if the amount in controversy is less than $100, and judicial review shall not be available to the individual if the amount in controversy is less than $1,000." 42 U.S.C. § 1395ff(b)(1)(E)(i). The $1,000 amount in controversy is annually adjusted for inflation and was at set at $1,500 in 2016, the year in which Bloom sought judicial review. See Medicare Program;

Medicare Appeals; Adjustment to the Amount in Controversy Threshold Amounts for Calendar Year 2016, 80 Fed. Reg. 57,827, 57,828 (Sept. 25, 2015); see also 42 U.S.C. § 1395ff(b)(1)(E)(iii).

The second provision at issue in this appeal directs that "[i]n determining the amount in controversy, the Secretary [of HHS], under regulations, shall allow two or more appeals to be aggregated if the appeals involve" "the delivery of similar or related services to the same individual by one or more providers of services or suppliers."  42 U.S.C. § 1395ff(b)(1)(E)(ii). Medicare beneficiaries may thus aggregate their claims for benefits, but only upon satisfying the following conditions: the claimant's unaggregated claims must (1) involve "related services" (here, the CGM sensors and transmitters) that (2) are rendered "to the same individual" (Bloom) (3) by "one or more providers."  Id.

So long as each Medicare claim before the district court satisfies these conditions, the text of § 1395ff(b)(1)(E) permits plaintiffs to aggregate the amount of their claims against HHS to meet the amount-in-controversy requirement for judicial review.  The statutory text directs the Secretary to make regulations that allow two or more appeals to be aggregated (under

7

stated conditions) in determining the amount in controversy without suggesting that those regulations should apply only to agency review and not to judicial review. The statute thus expresses congressional intent that, as to both agency and judicial review, aggregation is permitted when the claims conform to the conditions specified. This reading of the text reflects a basic reality: federal courts have long permitted the aggregation of a single plaintiff's claims against a single defendant to satisfy the jurisdictional amount in controversy in other contexts. Take, for example, "[t]he traditional judicial interpretation" of the diversity jurisdiction statute's amount-in-controversy requirement, which "has been from the beginning that . . . [a]ggregation has been permitted . . . in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant." Snyder v. Harris, 394 U.S. 332, 335 (1969). The same was true for the federal question statute, which until 1980 carried its own amount-in-controversy requirement. See Hunter v. United Van Lines, 746 F.2d 635, 650 (9th Cir. 1984) (collecting authorities); Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 846 n.11 (4th Cir. 1974) ("The general rule is that in an action involving a single plaintiff and a single defendant, when the basis of jurisdiction is

8

diversity of citizenship or when each of the claims sought to be joined involves a federal question, a party may aggregate all the claims he has against an opposing party in order to satisfy the requisite jurisdictional amount."); see also 14AA Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3704 (4th ed. 2020).  There is no textual basis to conclude that the Medicare Act, which by its terms mandates regulations that allow aggregation of claims by a single plaintiff against a single defendant involving "related services," prevents the aggregation of all claims against HHS in the district court over which the court would independently have jurisdiction but for the jurisdictional amount requirement.

The District Court, relying on the fact that § 1395ff(b)(1)(E)(ii) is directed to "the Secretary [of HHS]," interpreted that provision as applying only to appeals before the agency.  The court concluded that § 1395ff(b)(1)(E) "is silent about aggregation of claims at the district court level."  The lack of any mention of aggregation at the judicial review stage, the court reasoned, suggested that Congress intended to exclude aggregation of claims by a court.  Special App'x 11.

We disagree with the District Court's interpretation of § 1395ff(b)(1)(E)(ii). That provision, which mandates that aggregation be permitted in certain circumstances, does not specify that its command is limited to agency review. While its true that the provision is directed to "the Secretary," it instructs the Secretary to promulgate regulations providing for aggregation in the enumerated circumstances. That in no way implies that the provision addresses only aggregation before the agency. We see no basis for the District Court's conclusion that § 1395ff(b)(1)(E)(ii) speaks only of aggregation at the agency level. The more natural reading is that the regulations to be promulgated by the Secretary must allow aggregation regardless of whether in agency review or judicial review.

Even if we agreed with the District Court that § 1395ff(b)(1)(E)(ii) is limited to agency review, and thus is silent as to judicial aggregation, we would not agree that this silence indicates, by negative inference, an intention to bar judicial aggregation. That argument brings to mind the "interpretive canon, <u>expressio</u> <u>unius</u> <u>est</u> <u>exclusio</u> <u>alterius</u>, expressing one item of [an] associated group or series excludes another left unmentioned." <u>NLRB v. Sw.</u> <u>Gen., Inc.</u>, 137 S. Ct. 929, 940 (2017) (quotation marks omitted). We do not

think that the canon would apply here to preclude aggregation of Bloom's claims before the District Court.

First, the Government notably does not rely on expressio unius to press its argument on appeal. And second, the canon in any event has its limits. The Supreme Court has explained that the "force of any negative implication" derived from expressio unius "depends on context." Id. (quotation marks omitted). Expressio unius thus applies only when "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it," Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003), that is, "when circumstances support[] a sensible inference that the term left out must have been meant to be excluded," NLRB, 137 S. Ct. at 940 (quotation marks omitted); see Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012) ("Virtually all the authorities who discuss [expressio unius] emphasize that it must be applied with great caution, since its application depends so much on context.").[1] We thus turn to

---

[1] The Supreme Court has often declined to rely on the expressio unius canon when it is insufficiently sensitive to context. See, e.g., NLRB, 137 S. Ct. at 940; Marx v. Gen. Revenue Corp., 568 U.S. 371, 381–384 (2013); Barnhart, 537 U.S. at 168; Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 80–83 (2002); United States v. Vonn, 535 U.S. 55,

the context in which the relevant statutory language was forged. See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 144 (2000).

B

In 1986 Congress codified in the Medicare Act an early version of the agency aggregation provision at issue in this case. See Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, sec. 9341, 100 Stat. 1874, 2037–38. HHS proposed a set of rules to implement that provision. One of these rules provided:

> (a) The determination as to whether the amount in controversy is—
>
>    (1) $100 or more is made by the presiding officer;
>
>    (2) $1,000 or more is made by the reviewing court.
>
> (b) In determining the amount in controversy, the presiding officer and the reviewing court, as appropriate, also make the determination as to what constitutes similar or related services and common issues of law and fact.

---

65 (2002); United Dominion Indus., Inc. v. United States, 532 U.S. 822, 836 (2001); Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 703 (1991); Burns v. United States, 501 U.S. 129, 136 (1991); cf. Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967) ("The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent." (quotation marks omitted)).

Medicare Program; Aggregation of Medicare Claims and Administrative

Appeals and Judicial Review, 56 Fed. Reg. 28,353, 28,359 (June 20, 1991)

[hereinafter "1991 Proposed Rule"] (quotation marks omitted). As early as

1991, therefore, HHS recognized that "reviewing court[s]" could aggregate

similar Medicare claims to determine the amount in controversy in Medicare

cases. Id. Three years later, when the notice-and-comment period for the

proposed rules concluded, HHS again acknowledged that the Medicare Act

permitted district courts to aggregate similar Medicare claims:

> [T]he statute does not require the courts to follow the
> administrative aggregation rules established by [HHS] for
> determining the amount in controversy. However, the
> courts may wish to use the administrative rules as a
> reference point for determining the amount in controversy
> at the judicial level.

Medicare Program; Aggregation of Medicare Claims for Administrative

Appeals, 59 Fed. Reg. 12,172, 12,174 (Mar. 16, 1994) [hereinafter "1994

Statement and Rule"]. Consistent with this interpretation, HHS promulgated

the following rule in 1994: "[W]hen a civil action is filed, [HHS] may assert

that [its regulatory] aggregation principles . . . may be applied to determine

the amount in controversy for judicial review." Id. at 12,182. That new rule

would have been entirely unnecessary had HHS believed that courts could not aggregate Medicare claims under § 1395ff.

At various times, then, HHS has either openly supported the aggregation of claims to trigger judicial review, see 1991 Proposed Rule, 56 Fed. Reg. at 28,359 (lodging power in "the reviewing court"), or attempted to confine the statutory authority of federal courts to do so, see 1994 Statement and Rule, 59 Fed. Reg. at 12,182 (providing that agency aggregation provisions may govern in court). Whatever its objective, HHS has thus repeatedly acknowledged that the Act vests district courts with the authority to aggregate qualifying Medicare claims to satisfy the amount-in-controversy requirement in Medicare cases. See Brown & Williamson Tobacco Corp., 529 U.S. at 144.

We presume that Congress was aware of HHS's position on this central issue of judicial authority to aggregate Medicare claims when, in 2000, it last amended the aggregation and amount-in-controversy language of § 1395ff. See Consolidated Appropriations—FY 2001, Pub. L. No. 106-554, § 1869, 114 Stat. 2763, 2763A-536 (2000). We see no evidence at all that this amendment was intended to upend HHS's longstanding acceptance of judicial

14

aggregation of Medicare claims, or to limit aggregation to administrative proceedings. The only relevant congressional report in the legislative history of the amendment tells us that Congress intended to permit aggregation to satisfy the amount-in-controversy threshold for district court proceedings. Specifically, the House Conference Report for the 2000 amendment explains:

> [if] contested amounts are greater than $100, an individual would be able to appeal an adverse reconsideration decision by requesting a hearing by the Secretary . . . . If the dispute is not satisfactorily resolved through this administrative process, and if contested amounts are greater than $1,000, the individual would be able to request judicial review . . . . Aggregation of claims to meet these thresholds would be permitted.

H.R. Rep. No. 106-1033, at 895 (2000) (Conf. Rep.) (emphasis added).

The Report (and the emphasized language in particular) thus strongly suggests that the amendment's drafters sought to permit aggregation in both the administrative and the judicial contexts. The Report's use of the plural "these thresholds" when referencing aggregation can only refer to the separate amount in controversy "thresholds" for administrative and judicial review mentioned in the prior sentences. Id.

In considering the foregoing history, we must presume that Congress acted against the prevailing regulatory backdrop relating to judicial

15

aggregation.  See Brown & Williamson Tobacco Corp., 529 U.S. at 144; New York v. U.S. Dep't of Homeland Sec., 969 F.3d 42, 70–74 (2d Cir. 2020).  We have already described HHS's repeated acknowledgments that judicial aggregation of Medicare claims is permissible.  Congress would have been aware of HHS's position prior to 2000 as it considered whether claims could be aggregated for judicial review.  See Lorillard v. Pons, 434 U.S. 575, 580–81 (1978).

HHS's view persisted after the congressional amendments.  In 2005 HHS promulgated a rule that "[t]o be entitled to judicial review, a party must meet the amount in controversy requirements of this subpart at the time it requests judicial review."  Medicare Program: Changes to the Medicare Claims Appeal Procedures, 70 Fed. Reg. 11,420, 11,486 (Mar. 8, 2005) [hereinafter "2005 Rule"].  This rule, which HHS argues limits beneficiaries from "aggregat[ing] claims . . . after the ALJ stage of review," Appellee's Br. 26, clearly presumes that plaintiffs may aggregate their Medicare claims in court to meet § 1395ff's jurisdictional amount.  It specifically provides definitions for "purposes of aggregating claims to meet the amount in

16

controversy requirement for an ALJ hearing or judicial review." 2005 Rule, 70 Fed. Reg. at 11,486 (emphasis added).

In sum, HHS has long had the view that district courts enjoy an independent ability to aggregate claims under the Medicare Act, while Congress, which we presume was aware of HHS's position, has said nothing that would disturb that view. This backdrop of legislative and regulatory history confirms what the Medicare Act's text itself makes clear enough: "[a]ggregation of claims to meet" the Act's amount-in-controversy requirement for judicial review is "permitted." H.R. Rep. No. 106-1033, at 895.

                                    III

In urging a contrary conclusion, HHS claims that permitting judicial aggregation would render aggregation before the agency superfluous. But a quick example shows why this is wrong. Suppose a Medicare beneficiary had two claims, each for $51. Without aggregating both claims at the agency level, the beneficiary would not be entitled to a hearing before an ALJ on either claim. See 42 U.S.C. § 1395ff(b)(1)(E) ($100 amount in controversy for ALJ hearing). As a result, the beneficiary would also not be entitled to judicial

review of either claim because the Medicare Act requires that claims first be exhausted through the administrative process. See 42 U.S.C. § 1395ff(b)(1)(A); id. § 405(g). Agency aggregation thus permits Medicare beneficiaries to seek review of smaller coverage requests that the agency otherwise could not review. And agency aggregation will continue to serve that important function whether or not judicial aggregation is permitted.

HHS also submits that its interpretation of the Medicare Act "represents a permissible construction of the statute entitled to deference under" either Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), or Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). Again, we disagree.

Starting with Chevron deference, the agency claims that the regulatory provisions that govern the aggregation of claims before an ALJ, see 42 C.F.R. § 405.1006(e)–(f), "do not provide a means for a beneficiary to aggregate claims in the first instance after the ALJ stage of review," Appellee's Br. 26. But whether or not these regulatory provisions now create a means to aggregate claims is irrelevant to the principal question of statutory interpretation before us, which is whether aggregation is permissible under

18

the Medicare Act. HHS's regulations do not answer whether claims must be aggregated before the agency as a precondition to aggregation before a district court, or whether claims may be aggregated before the district court at all. So even if we were inclined to defer to HHS's regulations under Chevron, deference would make no difference to our resolution of this appeal.[2] In any event, deference to HHS's aggregation regulations would be inappropriate even if they answered the question presented since we hold that Congress already "has directly spoken," Chevron, 467 U.S. at 842, in requiring the agency to provide for judicial aggregation.

For similar reasons, HHS's interpretation of its own regulation is not entitled to deference under Seminole Rock. Since the statute provides for aggregation before the district court, we do not owe deference to an HHS interpretation adopting a contrary rule.

---

[2] HHS also argues that 42 C.F.R. § 405.1006(c) specifically forecloses Bloom's suit. That provision states: "To be entitled to judicial review, a party must meet the amount in controversy requirements of this subpart at the time it requests judicial review." Id. But as neither party disputes, the combined value of Bloom's claims at the time he filed suit exceeded the Medicare Act's amount-in-controversy requirement for judicial review. The principal question for us is whether Bloom was entitled to combine the value of his claims in order to satisfy that requirement.

This brings us to a few important points about the limitations of our holding. The first point relates to the exhaustion requirement involving Medicare claims. Beneficiaries may not obtain judicial review of claims, whether individual or aggregated, that were not previously adjudicated before and finally decided by the agency (for example, claims of less than $100 that were not aggregated before the agency). See 42 U.S.C. § 1395ff(b)(1)(A); id. § 405(g). The second point is that the various timing requirements in HHS's regulations together work to restrict the number of claims that can be aggregated in a single civil action. See 42 C.F.R. § 405.1006(e)(ii). The last limit is HHS's latitude in formulating rules to govern the administrative appeals process, including rules that specifically curtail the aggregation of administrative appeals. See 42 U.S.C. § 1395ff(b)(1)(E)(ii).

With these limits in mind, we hold that the Medicare Act does not prohibit Bloom from aggregating his claims for the first time in district court. Our conclusion rests on the text of the Medicare Act, as reinforced by its regulatory and legislative history. Because we conclude that the Medicare

Act permits Bloom to aggregate his claims before the District Court, we do not address Bloom's alternative argument that the District Court should have exercised supplemental jurisdiction over the M-15-1505 and M-16-10554 decisions.  See 28 U.S.C. § 1367.

## CONCLUSION

For the foregoing reasons, we **VACATE** the District Court's judgment and **REMAND** for proceedings consistent with this opinion.