**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2467**

VICTOR ANTONIO JIMENEZ-RODRIGUEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: January 27, 2021                                   Decided: April 29, 2021

Before GREGORY, Chief Judge, WYNN, and HARRIS, Circuit Judges.

Petition for review granted, vacated and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:** Bradley Bruce Banias, WASDEN BANIAS LLC, Mount Pleasant, South Carolina, for Petitioner. Robert Dale Tennyson, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Joseph H. Hunt, Assistant Attorney General, Carl McIntyre, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

GREGORY, Chief Judge:

After being placed in removal proceedings, Victor Jimenez-Rodriguez sought a U visa, which would have allowed him to remain in the United States lawfully as a temporary resident. But Jimenez-Rodriguez could not acquire the visa without a waiver of inadmissibility. He requested that waiver from U.S. Citizenship and Immigration Services ("USCIS"), and USCIS denied the request. After the immigration judge ("IJ") ordered removal, Jimenez-Rodriguez argued before the Board of Immigration Appeals ("BIA") that the IJ erred by denying him a continuance and that Jimenez-Rodriguez should be allowed to renew his request for an inadmissibility waiver before the IJ. The BIA rejected those claims and affirmed the order of removal. We grant the petition and remand for further proceedings, as we conclude that the Department of Justice's regulations empower the IJ to consider Jimenez-Rodriguez's application for an inadmissibility waiver under 8 U.S.C. § 1182(d)(3)(A)(ii).

## I.

Victor Jimenez-Rodriguez is a Mexican national and citizen. When he was ten years old, his parents brought him into the United States without lawful status on January 15, 2001. He has lived in this country ever since. Because he is undocumented, he lacked the paperwork that would enable him to seek employment. So to apply for a job and provide for his family, he purchased a fake ID from a friend. But he was caught—and charged with identity theft. Jimenez-Rodriguez pleaded guilty and was sentenced to ten to twelve

2

months in prison. After he served his sentence, U.S. Immigrations and Customs Enforcement detained him and placed him in removal proceedings.

During his initial proceedings, Jimenez-Rodriguez was released on bond. One day, Jimenez-Rodriguez was riding in the passenger seat of his friend's vehicle when a semi-truck crashed into their car on the interstate. The collision injured Jimenez-Rodriguez and killed his friend. As the only eyewitness to this tragic incident, Jimenez-Rodriguez cooperated fully with law enforcement and assisted them in prosecuting the truck driver for vehicular homicide.

Due to these events, Jimenez-Rodriguez informed the IJ that he intended to obtain temporary lawful residency through a U visa as the victim of a serious crime cooperating with law enforcement in prosecuting the offender. *See* 8 U.S.C. § 1101(a)(15)(U). Because Jimenez-Rodriguez is considered "inadmissible" under the INA—which renders him ineligible for a U visa, 8 U.S.C. § 1182(a)—he submitted to USCIS an application for a waiver of inadmissibility alongside his petition for the visa. Given the pending U visa petition, the IJ continued Jimenez-Rodriguez's removal proceedings several times to give him the chance obtain the visa. In an April 2015 hearing before the IJ, Jimenez-Rodriguez's attorney stated that he had been contacted by a Government employee informing him that Jimenez-Rodriguez's U visa had received prima facie approval. In a follow-up hearing a few days later, the Government represented that it found no documentation confirming this, though it observed that notes in its internal database "indicate that there is an approval." A.R. 71–74. Consequently, the IJ administratively closed Jimenez-Rodriguez's removal proceedings until the resolution of his visa petition.

3

But, two years later, USCIS denied Jimenez-Rodriguez a waiver of inadmissibility, rendering him ineligible for the U visa. The Government subsequently reopened Jimenez-Rodriguez's removal proceedings, where Jimenez-Rodriguez appeared with a new lawyer. During those proceedings, his lawyer asked for no relief other than a continuance "to review the case file," as he "still [didn't] know all the facts in this case[.]" A.R. 93.

The IJ entered a final order of removal, denying the request for a continuance for failure to show good cause. Following the order, the IJ issued a written statement of facts and law. After explaining that continuances may be granted only for good cause, and listing the several factors that inform that determination, the IJ cited *Lendo v. Gonzales*, 493 F.3d 439, 441 (4th Cir. 2007), to conclude that it was not an abuse of discretion to refuse to an open-ended continuance based on the speculative possibility that a pending application before USCIS would be approved. Additionally, the IJ explained that Jimenez-Rodriguez had been "afforded numerous continuances to await the USCIS' adjudication" of his U visa petition. *Id.* But because USCIS denied Jimenez-Rodriguez's U visa petition, the IJ found that Jimenez-Rodriguez was "not prima facie eligible" for adjustment of status and therefore did not meet his burden to show good cause for another continuance. *Id.*

Jimenez-Rodriguez appealed to the BIA. He argued that: (1) the IJ erred by denying his request for a continuance due to the pending request for reconsideration of the waiver denial; and (2) the case should be remanded to permit him to present a new waiver application directly to the IJ under 8 U.S.C. § 1182(d)(3)(A)(ii).

The BIA affirmed the IJ's order and rejected Jimenez-Rodriguez's request to remand. Addressing the denial of a continuance, the BIA observed that "counsel had ample

4

time to familiarize himself with the respondent's case and his request for more time to review his file does not represent good cause." *Id.* Additionally, the BIA noted that because "USCIS had denied an [inadmissibility waiver] application based on adverse factors, it was not unreasonable for the Immigration Judge to find a lack of prima facie eligibility for relief from USCIS." A.R. 3–4 (citing *Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 413–15 (A.G. 2018)). The BIA also rejected Jimenez-Rodriguez's request for a remand to seek an inadmissibility waiver directly from the IJ. In doing so, it cited *Matter of Khan*, 26 I. & N. Dec. 797 (BIA 2016), which determined that IJs have the authority to grant inadmissibility waivers under § 1182(d)(3)(A)(ii) only in limited circumstances not applicable to a U visa applicant.

Jimenez-Rodriguez timely appealed to this Court. This Court has jurisdiction over Jimenez-Rodriguez's petition for review of a final order of removal under 8 U.S.C. § 1252(a)(1), (a)(5).[1]

## II.

"When, as here, the BIA affirms the IJ's decision with an opinion of its own, we review both decisions." *Alvarez Lagos v. Barr*, 927 F.3d 236, 248 (4th Cir. 2019). "This Court reviews de novo the legal conclusions of the BIA, including issues of regulatory

---

[1] On appeal, Jimenez-Rodriguez also challenges the BIA's decision to affirm the IJ's denial of a continuance. Though 8 U.S.C. § 1252(a)(2)(B)(ii) states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . to be in the discretion of the Attorney General," this Court "agree[s] with the majority of circuits that . . . § 1252(a)(2)(B)(ii) does not bar judicial review of an IJ's denial of a motion to continue removal proceedings." *Lendo*, 493 F.3d at 441 n.1.

5

construction," though we defer to the agency's interpretation when appropriate. *Romero v. Barr*, 937 F.3d 282, 290 (4th Cir. 2019).

## A.

U visas allow a noncitizen to remain in the United States as a lawful temporary resident if that person has suffered "substantial physical or mental abuse" as the victim of a serious crime and has cooperated with law enforcement to investigate or prosecute the offender. 8 U.S.C. §§ 1101(a)(15)(U), 1184(p). If the noncitizen is inadmissible, however, that person must obtain a waiver of inadmissibility in order to obtain a U visa. 8 C.F.R. § 214.1(a)(3)(I). There is no question that a U visa applicant may request a waiver of inadmissibility from USCIS. *See* 8 U.S.C. § 1182(d)(14); 8 C.F.R. § 212.17. The issue presented here is whether an IJ may grant such a waiver.

IJs are "creatures of statute, receiving some of their powers and duties directly from Congress, and some of them by subdelegation from the Attorney General." *Lopez–Telles v. INS*, 564 F.2d 1302, 1303 (9th Cir. 1977); *see also* 8 U.S.C. § 1101(b)(4) (defining an "immigration judge" as an "administrative judge within the Executive Office for Immigration Review, qualified to conduct specified classes of proceedings" who "shall perform such duties as the Attorney General shall prescribe"); 8 C.F.R. § 1001.1(l) (same). Jimenez-Rodriguez identifies no statutory provision that expressly empowers IJs to grant a waiver of inadmissibility in this case. Rather, Jimenez-Rodriguez contends that the plain text of 8 U.S.C. § 1182(d)(3)(A)(ii) gives the Attorney General the discretion to grant requests for inadmissibility waivers—and that IJs, as the Attorney General's delegated representatives, share that same authority.

6

As a threshold matter, the Government argues that § 1182(d)(3)(A)(ii) does not empower the Attorney General to issue inadmissibility waivers in this context. But under *Chenery*, we review an agency's decision "solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943). Here, the BIA did not discuss § 1182(d)(3)(A)(ii) or the Attorney General's authority when affirming the final order of removal. Instead, the BIA justified its decision by citation to *Matter of Khan*, 26 I. & N. Dec. at 797. In *Matter of Khan*, the BIA assumed that § 1182(d)(3)(A)(ii) authorized the Attorney General to issue inadmissibility waivers, reasoning that "even if the Attorney General has this waiver authority regarding U visas, we cannot conclude that such authority extends to Immigration Judges[.]" *Id.* at 801. Thus, because the BIA did not base its decision on the interpretation of § 1182(d)(3)(A)(ii), and because our review is limited to the scope of the agency's reasoning, this statutory question is beyond the scope of this appeal.[2]

_____

[2] In certain instances, we have found no *Chenery* problem where the case presents a purely legal question fully briefed on a complete record. *See Yanez-Marquez v. Lynch*, 789 F.3d 434, 461 n.14 (4th Cir. 2015). But even if we were to consider this question, it would not provide grounds for affirming the BIA. Contrary to the Government's arguments, the Department's regulations recognize that § 1182(d)(3)(A)(ii) empowers the Attorney General (through their IJs) to issue waivers in at least some circumstances. *See* 8 C.F.R. § 1212.14(b). As for the limitation of these waivers to those "seeking admission," the INA states that "[a]n alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1125(a)(1). Because Jimenez-Rodriguez was never lawfully admitted, he qualifies as someone "seeking admission," a fact that distinguishes his case from those of the petitioners in *Sunday* and *Man*. *See Sunday*, 832 F.3d at 212, 217 (involving petitioner who had been lawfully admitted but overstayed his temporary visa); Resp. Br. at 6, *Man*, 940 F.3d at 1354 (same).

**B.**

Assuming (as the BIA did) that § 1182(d)(3)(A)(ii) authorizes the Attorney General to grant a waiver in this context, we consider whether IJs share that same authority. To suggest that they do, Jimenez-Rodriguez urges this Court to join the Seventh Circuit in reading 8 C.F.R. § 1003.10(a) to grant IJs the full powers of the Attorney General under the INA unless otherwise limited by regulation.

> 8 C.F.R. § 1003.10 reads:
>
> (a) Appointment. The immigration judges are attorneys whom the Attorney General appoints as administrative judges . . . to conduct specified classes of proceedings, including hearings under section 240 of the Act. Immigration judges shall act as the Attorney General's delegates in the cases that come before them.
>
> (b) Powers and duties. In conducting hearings under section 240 of the Act and such other proceedings the Attorney General may assign to them, immigration judges shall exercise the powers and duties delegated to them by the Act and by the Attorney General through regulation. In deciding the individual cases before them . . . immigration judges shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases. . . .

8 C.F.R. § 1003.10.

In *Baez-Sanchez*, the Seventh Circuit claimed that "§ 1003.10(b) does not delegate to IJs any power to waive an alien's inadmissibility." *Baez-Sanchez v. Sessions*, 872 F.3d 854, 855 (7th Cir. 2017). But the Seventh Circuit concluded that § 1003.10(a) does. "It says that '[i]mmigration judges shall act as the Attorney General's delegates in the cases that come before them.' This sounds like a declaration that IJs may exercise all of the

8

Attorney General's powers 'in the cases that come before them', unless some other regulation limits that general delegation." *Id.*

The Seventh Circuit's reading, however, leans too heavily on the word "delegates." The fact that a principal delegates power to an agent does not necessarily mean that the agent is delegated all power held by the principal. *Cf.* 26 U.S.C. § 7701(a)(12)(A)(i) (defining the term "delegate" to mean any officer, employee, or agency authorized by the Secretary of Treasury "to perform the function mentioned or described in the context").

Reading § 1003.10 as a whole, we cannot conclude that § 1003.10(a) alone empowers IJs with the full scope of the Attorney General's powers. Section 1003.10(a) relates to the "[a]ppointment" of IJs. 8 C.F.R. § 1003.10(a). By describing them as "attorneys whom the Attorney General appoints as administrative judges," and as "the Attorney General's delegates," the regulation makes clear that they are Executive Branch officers, notwithstanding their title as "judges." *See* 72 Fed. Reg. 53,673, 53,673 (Sep. 20, 2007) (noting "at least some instances of apparent confusion" regarding "the role and status of immigration judges," and discussing how IJs are "Executive Branch adjudicators and do not serve in a purely judicial capacity"). Section 1003.10(b) then describes the "[p]owers and duties" of IJs. It reaffirms that the IJs' powers are limited to those specifically given to them in the INA or "through regulation," using language that would be unnecessary if IJs had already been given the Attorney General's full authority in § 1003.10(a). *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 668 (2007) (rejecting reading of regulation that would render it superfluous or redundant).

## C.

Nevertheless, § 1003.10(b) states that IJs, "[i]n deciding the individual cases before them, . . . may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases." 8 C.F.R. § 1003.10(b). Using similar language, 8 C.F.R. § 1240.1(a)(1)(iv) states that IJs have the authority "[t]o take any other action consistent with applicable law and regulations as may be appropriate." We read the plain language in these two provisions to give IJs the Attorney General's power to issue § 1182(d)(3)(A)(ii) waivers.[3]

In *Romero v. Barr*, this Court relied upon the "any action" language in § 1003.10(b) to hold that IJs had the power to administratively close a proceeding, even though "[g]eneral administrative closure is not specifically authorized by the INA or the regulations governing IJs or the BIA." 937 F.3d 282, 288, 294 (4th Cir. 2019).[4] "Read naturally, the word 'any' has an expansive meaning," giving "IJs and the BIA broad

---

[3] If a regulation is ambiguous, we will defer, in appropriate circumstances, to the interpretation of the agency that promulgated it. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). But because the plain text of these regulations unambiguously provides a broad grant of authority, we need not defer to any agency interpretation here.

[4] Following *Romero*, the Department of Justice amended § 1003.10(b) to state that

> [n]othing in this paragraph (b) nor in any regulation contained in part 1240 of this chapter shall be construed as authorizing an immigration judge to administratively close or otherwise defer adjudication of a case unless a regulation promulgated by the Department of Justice or a previous judicially approved settlement expressly authorizes such an action.

85 Fed. Reg. 81,588, 81,655 (Dec. 16, 2020).

discretion in how to manage and resolve cases[.]" *Id.* at 292 (cleaned up); *see also id.* (collecting cases construing the term "any" to have broad meaning). While *Romero* dealt with administrative closure—a procedural action—neither *Romero* nor the language of § 1003.10(b) so limit the reach of that regulation. *See id.* at 292 (reading the plain language of § 1003.10(b) "most naturally to encompass actions *of whatever kind* appropriate for the resolution of a case" (emphasis added)). Additionally, § 1003.10(b) states that, "[i]n *deciding* the individual cases before them," IJs may take any action "appropriate and necessary for the *disposition* of such cases." 8 C.F.R. § 1003.10(b) (emphases added). By framing IJs' power in terms of how cases are decided, the regulation indicates that its broad grant of authority extends beyond just procedural devices.

In addition, § 1240.1(a)(1)(iv) offers similarly broad language when describing IJs' substantive authority. Section 1240.1(a)(1)(i)–(iii) describes IJs' power to adjudicate removability; order withholding of removal under the Convention Against Torture; and "determine applications" for cancellation of removal, adjustment of status, and various waivers of inadmissibility. The regulation then ends this list of substantive powers with a catchall provision, stating that IJs may "take any other action consistent with applicable law and regulations as may be appropriate." 8 C.F.R. § 1240.1(a)(1)(iv). Read plainly, § 1240.1(a)(1)(iv) gives IJs the power to take "any other action" "appropriate"—which includes granting inadmissibility waivers where the Attorney General is so empowered by statute. *See Atunnise v. Mukasey*, 523 F.3d 830, 839 (7th Cir. 2008) (citing § 1240.1(a)(1)(iv) as a "catchall" provision supporting an IJ's ability to grant a § 1182(d)(3) waiver during removal proceedings); *Matter of Castro-Tum*, 27 I. & N. Dec.

11

271, 285 (2018) (reading § 1240.1(a)(1)(iv) to grant IJs authority to "issue final orders in analogous matters" to those specified in the preceding provisions of § 1240.1(a)(1)(i)–(iii)), *abrogated on other grounds by Romero*, 937 F.3d at 292.

We recognize that 8 C.F.R. § 1240.1(a)(1)(ii) lists several waiver applications that an IJ may grant under other statutory provisions (such as §§ 1182(d)(11) and (d)(12)), but does not list waivers under § 1182(d)(3). In such scenarios, we sometimes apply the *expressio unius* canon, where a statute or regulation "expressing one item of an associated group or series" means that the law intends to "exclude[] another left unmentioned." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017). Such a conclusion, however, "depends on context." *Id.* The canon applies "only when circumstances support a sensible inference that the term left out must have been meant to be excluded." *Id.* (cleaned up). Read in context, the *expressio unius* canon cannot apply here. Despite the omission of § 1182(d)(3)(A)(ii) waivers from this list, we know that IJs can grant such waivers in at least some circumstances under 8 C.F.R. § 1212.4(b). And § 1240.1(a)(1)(iv) provides a clear catchall provision stating that IJs may take other actions beyond those specifically enumerated in § 1240.1(a)(1)(i)–(iii).

Our reading of the text in §§ 1003.10(b) and 1240.1(a)(1)(iv) is supported by the historical language of these regulations. Beginning with the enactment of the INA—and for over fifty years thereafter—the Department of Justice's regulations expressly conferred IJs with the Attorney General's general statutory authority. *See* 8 C.F.R. § 236.1 (1952) ("[S]pecial inquiry officers shall, in determining cases referred to them . . . exercise such discretion and authority conferred upon the Attorney General by [the INA] as is appropriate

12

and necessary for the disposition of such cases."); 8 C.F.R. § 240.1(a)(2) (1998) ("Subject to any specific limitation prescribed by the Act and this chapter, immigration judges shall also exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of such cases."); 8 C.F.R. § 1240.1(a)(2) (2006) (same).

While the Department of Justice eventually amended these regulations in 2007, it preserved significant portions of the original language and expressed no intent to cabin the substantive authority of an IJ. *See* 72 Fed. Reg. at 53,673 (explaining the promulgation of the final rule to outline the authorities of the EOIR Director, Chairman of BIA, and Chief Immigration Judge; implement technical changes reflecting the enactment of the Homeland Security Act; and add management directives to "improv[e] the workings of the immigration hearing process"). In the amendment, the Department of Justice transferred much of the text from § 1240.1(a)(2) to § 1003.10(b).[5] *See id.* at 53,677–78. Though

---

[5] Regulation 8 C.F.R. § 1240.1(a)(2) (2006) states:

> In determining cases referred for further inquiry, immigration judges shall have the powers and authority conferred upon them by the Act and this chapter. Subject to any specific limitation prescribed by the Act and this chapter, immigration judges shall also exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of such cases.

Following amendment in 2007, 8 C.F.R. § 1003.10(b) states:

> In conducting hearings under section 240 of the Act and such other proceedings the Attorney General may assign to them, immigration judges shall exercise the powers and duties delegated to them by the Act and by the Attorney General through regulation. In deciding the individual cases before

(Continued)

§ 1003.10(b) no longer stated that IJs shall "exercise the discretion and authority conferred upon the Attorney General," it replaced that phrase with similarly broad language stating that IJs "shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations." *Id.* Thus, the history of the regulations informs the scope of "any action" authorized under §§ 1003.10(b) and 1240.1(a)(1)(iv): they authorize an IJ to take any action within the bounds of the Attorney General's statutory authority.

Of course, the plain text of §§ 1003.10(b) and 1240.1(a)(1)(iv) imposes other limits. These regulations only authorize IJs to take actions within the cases before them that are (1) "appropriate and necessary" for resolving the case; and (2) "consistent with" statute and regulation. *See* 8 C.F.R. §§ 1003.10(b), 1240.1(a)(1)(iv). But waivers under § 1182(d)(3)(A)(ii) satisfy both limitations. First, these waivers are appropriate and necessary for resolving a case because they eliminate a bar to relief. In this case, for instance, Jimenez-Rodriguez had already received prima facie approval of his visa petition, indicating that all that he needed was the waiver of inadmissibility to avoid removal.[6] *See* A.R. 71–74.

_____

them . . . immigration judges shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases. . . .

[6] While Congress has imposed a numerical cap on the number of U visas that may be issued each year, 8 U.S.C. § 1184(p), DHS has created a "waiting list" for applicants whose applications have been approved and who would have been granted a U visa but for the statutory cap. *See* 8 C.F.R. § 214.14(d)(2). Individuals on the waiting list are given deferred action, protecting them from removal. *Id.*

14

Second, the IJ's power to issue a § 1182(d)(3)(A)(ii) waiver to Jimenez-Rodriguez is consistent with statute and regulation.[7] *See* 8 C.F.R. §§ 1003.10(b), 1240.1(a)(1)(iv). The phrase "consistent with" does not require "exact correspondence . . . but only congruity or compatibility." *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1269 (D.C. Cir. 2004) (quoting *Env't Def. Fund, Inc. v. EPA*, 82 F.3d 451, 457 (D.C. Cir. 1996) (per curiam)); *cf. also Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 507 (4th Cir. 2015) (holding that because the Resource Conservation Recovery Act's saving clause only bars actions "inconsistent with" the Clean Water Act, "RCRA mandates that are just different, or even greater, than what the CWA requires are not necessarily . . . 'inconsistent' with the CWA").

Here, an IJ's ability to grant a § 1182(d)(3)(A)(ii) waiver is consistent with the statutory and regulatory scheme, which entrusts IJs with the responsibility to determine a petitioner's admissibility in removal proceedings, as well as the forms of relief available. *See* 8 U.S.C. § 1229a; 8 C.F.R. § 1240.1(A)(1)(ii) (describing IJs' authority to grant various forms of relief, including waivers of inadmissibility under several statutory provisions). Indeed, the BIA has invoked this reasoning to assert that IJs could exercise the Attorney General's power to issue § 209(c) waivers, even assuming that the relevant regulation did not expressly delegate to IJs that authority. *See In Re H-N*, 22 I. & N. Dec. 1039, 1043 (BIA 1999). "The fact that Immigration Judges have jurisdiction to determine

---

[7] *Romero* "reserve[d] the question of whether the language 'consistent with their authorities under the Act and regulations' . . . constitutes a limitation," declining to decide the issue because "it [did] not affect our analysis." 37 F.3d at 294 n.11.

the admissibility of aliens in exclusion, deportation, and now removal proceedings necessarily implies that they also have authority to determine if any relief is available to those aliens determined to be inadmissible." *Id.*

In response, the Government cites *Matter of Khan*, 26 I. & N. at 801–02, to argue that §§ 1212.4(b) and 1235.2(d)'s authorization of the waiver after denial by a district director at a port of entry reflects the Department of Justice's intent to limit these waivers solely to those applications. Regulation 8 C.F.R. § 1212.4(b) states that a petitioner's § 1182(d)(3) waiver application "shall be submitted . . . to the district director in charge of the applicant's intended port of entry prior to the applicant's arrival in the United States." 8 C.F.R. § 1212.4(b); *see also* 8 C.F.R. §§ 212.4(b), 235.2(d), 1235.2(d).[8] "If denied, the denial shall be without prejudice to renewal of the application in the course of proceedings before [an immigration judge.]"[9] 8 C.F.R. § 1212.4(b).

But §§ 1212.4(b) and 1235.2(d) do not describe this as the only circumstance where IJs may consider the waiver. They state that a district director's power to deny the waiver application is "without prejudice" to a renewed application before the IJ. By declaring the decision to be "without prejudice," the regulations presume that a petitioner retains an independently existing right to present that application before the IJ. *See Without*

---

[8] Though §§ 212.4(b) and 1212.4(b) refer to the waiver in "§ 1182(d)(3)(B)," the Government admits that this is outdated language, since the regulations intend to discuss the waiver that has since been relocated to § 1182(d)(3)(A)(ii). *See* Resp. Br. at 15 n.4, 17 n.6, 50.

[9] The text of the regulation refers to the "special inquiry officer," which was the previous name given to IJs. *See* 42 Fed. Reg. 46,045 (Sep. 14, 1977).

*Prejudice*, Black's Law Dictionary (11th ed. 2019) ("Without loss of any rights; in a way that does not harm or cancel the legal rights or privileges of a party."). As described above, this preexisting right to request a § 1182(d)(3)(A)(ii) waiver stems from the Attorney General's delegation of that authority to IJs under the broad language of §§ 1003.10(b) and 1240.1(a)(1)(iv).

The Government also cites several BIA decisions to assert that the waiver is limited to applications renewed after denial at ports of entry. But the decisions cited simply considered the waiver in that context—none said that the waiver could only occur in that circumstance. *See Matter of Kazemi*, 19 I. & N. Dec. 49, 52 (BIA 1984); *Matter of Hranka*, 16 I. & N. Dec. 491, 492 (BIA 1978); *Matter of Le Floch*, 13 I. & N. Dec. 251, 255 (BIA 1969). The case that comes closest to supporting the BIA's argument is *Matter of Fueyo*, where the BIA concluded that a petitioner in deportation proceedings did not qualify for the waiver because she had already entered the country. 20 I. & N. Dec. 84, 87 (BIA 1989). But *Matter of Fueyo* concluded that the waiver did not apply in that case because the petitioner was not someone "seeking admission," *id.* at 87 & n.3, a limitation that does not apply here. *See* 8 U.S.C. § 1125(a). And even *Matter of Fueyo* recognized that there have historically been cases where § 1182(d)(3) waivers were given outside the context of applications made at ports of entry. 20 I. & N. Dec. at 87 n.3 (noting two cases granting the waiver in conjunction with applications for adjustment of status).

Finally, the Government claims that allowing IJs to issue § 1182(d)(3)(A)(ii) waivers to U visa applicants would undermine the "harmonious statutory scheme" by making U visa adjudications inefficient. *See Matter of Khan*, 26 I. & N. Dec. at 804. True,

17

if an IJ grants the waiver, the case will continue and additional inter-agency communication may be required. But our immigration system commonly presents cases involving input from both the IJ and USCIS. *Cf. Perez-Vargas*, 478 F.3d at 192 (describing removal proceedings where a petitioner seeking adjustment of status through a labor visa must be admissible, apply for and receive a visa from USCIS, and receive adjustment of status from the IJ); *Gutierrez-Castillo v. Holder*, 568 F.3d 256, 259 (1st Cir. 2009) (addressing case where IJ issued a continuance to permit the filing of an immediate relative visa petition to USCIS, after which the petitioner "could apply for adjustment of status and a section 212(h) waiver of inadmissibility" from the IJ).

Moreover, our decision here does not require IJs to grant such waivers in all cases, in most cases, or even in this case. That decision is left to the IJs, who must "exercise their independent judgment and discretion" in the cases before them. 8 C.F.R. § 1003.10(b); *see* 8 U.S.C. § 1182(d)(3)(A)(ii). Though we acknowledge the Government's pragmatic concerns, the question of whether a waiver is appropriate in a given case is distinct from the question of whether an IJ has the power to give it. Reading the broad language of §§ 1003.10(b) and 1240.1(a)(1)(iv), we conclude that these regulations give the IJ the Attorney General's discretionary authority to grant a § 1182(d)(3)(A)(ii) waiver.

**III.**

Jimenez-Rodriguez also argues that the BIA erred by affirming the IJ's denial of a continuance. The decision to grant a continuance depends in part upon the likelihood that a petitioner will receive collateral relief. *Matter of L-A-B-R-*, 27 I. & N. Dec. at 413–15.

18

When the IJ evaluated the likelihood that Jimenez-Rodriguez would receive relief, he did so without considering his authority to grant Jimenez-Rodriguez an inadmissibility waiver. Because we hold that the IJ has such authority, we remand for the IJ to determine what relief, if any, to which Jimenez-Rodriguez is entitled, including whether an inadmissibility waiver is appropriate.[10]

## IV.

For the foregoing reasons, we grant the petition, vacate the BIA's final removal order, and remand for further proceedings consistent with this opinion.

*PETITION GRANTED;*
*VACATED AND REMANDED*

---

[10] The Government also suggests that this Court should deny remand because Jimenez-Rodriguez did not comply with certain procedural requirements for filing a request to reopen. But because the BIA did not apply such reasoning, we cannot consider this a basis for affirming the BIA's decision. *See Chenery Corp.*, 318 U.S. at 87–88.