# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2024

Lyle W. Cayce
Clerk

No. 23-60095

_____

Luis Alberto Sustaita-Cordova,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A209 341 899

_____

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Luis Alberto Sustaita-Cordova, a native and citizen of Mexico, appeals from a Board of Immigration Appeals ("BIA") decision dismissing his appeal from an Immigration Judge's ("IJ's") order denying his applications for cancellation of removal and voluntary departure. On appeal, Sustaita-Cordova contends that (1) the agency erred in determining he was ineligible for cancellation because he had not made the required exceptional-hardship and moral-character showings; (2) the BIA abused its discretion by denying his motion for administrative closure or a continuance; (3) the BIA abused its discretion by ignoring his request for a remand to pursue a waiver of

inadmissibility before the IJ; and (4) the BIA erred in rejecting his contention that his removal proceedings should be terminated due to a deficient Notice to Appear ("NTA").  We DENY the petition for review.

## I.

We set forth below the factual and procedural background of this appeal.

## A.

In February 2017, Sustaita-Cordova was served with an undated NTA in which the Department of Homeland Security ("DHS") charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted.  At a hearing in June 2017, he conceded removability.[1]  He subsequently applied for cancellation of removal under 8 U.S.C. § 1229b(b), arguing that his youngest child Judith, a U.S. citizen, would suffer hardship if he were removed.

During a hearing in October 2017, Sustaita-Cordova averred that he may be eligible for U nonimmigrant status (a "U visa"), which is available to noncitizens who are victims of certain crimes and who have cooperated with law enforcement to investigate or prosecute the offender.[2]  *See Campos v. United States*, 888 F.3d 724, 732 (5th Cir. 2018); 8 C.F.R. § 214.14.  He subsequently filed a motion for administrative closure or, alternately, a

---

[1] Sustaita-Cordova has been represented by counsel throughout the proceedings, from his June 2017 hearing through the present appeal.

[2] Sustaita-Cordova's Form I-918, Supplement B (known as a law enforcement certification, or "LEC") provided that, while he was living and working in New York in August 2002, an unknown assailant "approached and pointed a knife at [him,] demand[ing] money," and "then stabbed [him] in the chest" even after he complied.  Relying on his LEC, Sustaita-Cordova thus asserted before the IJ and the BIA that the felonious assault he suffered and "his assistance in the investigation" could render him eligible for a U visa.

continuance, based on his pending application for a U visa.[3]  He also sought voluntary departure in the alternative.  Sustaita-Cordova and Judith testified in support of Sustaita-Cordova's cancellation application.

**1.**

Sustaita-Cordova testified that he first arrived in the United States in 2001 and, after removal, he entered a second time in 2002.  Since then, he has worked several jobs in different cities, but only filed an income tax return in 2007, using an individual taxpayer identification number ("ITIN").  Sustaita-Cordova alleged that, after filing the 2007 tax return, his ITIN became invalid and the Internal Revenue Service was unable to verify his ITIN, so he stopped paying taxes.

Prior to entering the United States, Sustaita-Cordova married Consuelo Palacios ("Ms. Palacios") in 1998, and they had two children in Mexico: Jazmin and Luis, 18 and 16 years old, respectively, at the time of the 2018 hearing.  In 2005, after his wife and children joined him in the United States, his wife gave birth to Judith, who was 12 years old at the time of the 2018 hearing.  At the time of the 2017 hearing, Sustaita-Cordova and his wife were still legally married.  By the time of the 2018 hearing, Sustaita-Cordova had moved out of the family home.

Sustaita-Cordova claimed it was his discovery of Ms. Palacio's extramarital affair in February 2016 that led to his arrest for second-degree felony sexual assault of a child later in 2016.  He maintained that, after he confronted Ms. Palacios about her infidelity and said he wanted a divorce and full custody of their children, she filed a false complaint against him with

---

[3] An IJ may use administrative closure to remove a case temporarily from their active calendar, while the BIA may use it to remove a case temporarily from its docket. *See Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (B.I.A. 2012).

Child Protective Services ("CPS"), alleging he "placed [his] tongue on [Jazmin's] intimate parts." Sustaita-Cordova testified that Jazmin went along with the complaint because she feared being away from her mother. The police arrested him based on the complaint about a month later. Sustaita-Cordova stated that he refused to pay bail because he "wanted to fight [his] case." He spent about eight months in jail until the State of Texas moved to dismiss the sexual assault charge in February 2017.[4] Neither Ms. Palacios nor Jazmin testified at the 2018 removal hearing, and Ms. Palacios did not discuss the criminal matter in the letter she submitted to the IJ.

Regarding the hardship that Judith would face if he were removed to Mexico, Sustaita-Cordova explained that Judith has been diagnosed with sensorineural hearing loss since birth and has been wearing a hearing aid since she was four years old. He submitted evidence that she qualifies for special education as well as speech and behavioral therapy at school. She knows sign language, although her family does not, and she can read lips. According to Sustaita-Cordova, Judith's medical specialist has recommended that she obtain surgical implants for both of her ears because she has lost eighty to ninety percent of her hearing. Sustaita-Cordova testified that, without the surgery, Judith might lose her current limited ability to speak. He further stated that numerous doctor visits would be required for years following the surgery and that he must remain in the United States for the procedure to happen.

Sustaita-Cordova worries that if he is removed, Judith would remain, but would not have him available to handle her medical needs, and her performance at school would suffer without him handling her annual school

_____

[4] The state court granted the dismissal on the grounds that (1) the complaining witness requested a dismissal, and (2) the State had probable cause to arrest but did not have sufficient evidence to sustain a conviction.

meetings, monthly teacher communications, and her homework. According to Sustaita-Cordova, Judith would live with her mother, whom he alleged is incapable of being her primary caretaker. He highlighted Ms. Palacios's mental-health issues, which he described as "severe depression, nerves, and anxiety." He recalled an incident when Ms. Palacios was hospitalized after trying to commit suicide about nine years prior to the hearing. While Sustaita-Cordova referred to other mental-health incidents, he acknowledged that he was not aware of Ms. Palacios experiencing any suicidal thoughts in the last five years.

Sustaita-Cordova further testified that, because Ms. Palacios currently takes prescription medication for her depression and thyroid, she avoids driving, forgets things, and does little else apart from working and sleeping. He stated that when he was detained, Ms. Palacios did not help Judith due to her "lack of interest." However, the record shows that Ms. Palacios handled Judith's school meeting while Sustaita-Cordova was incarcerated. Moreover, Sustaita-Cordova admitted that if he were removed to Mexico, the medical bus would be available to transport Judith to her doctor appointments, and Judith would continue taking the bus to her school where she would continue to receive speech and behavioral therapy. He also admitted that Ms. Palacios had previously taken Judith to a medical appointment, although she was "stressed out," and that Ms. Palacios can drive when necessary.

Sustaita-Cordova further stated that he did not believe Ms. Palacios could afford everything for the family if he were removed, explaining that she did not earn much money and would not be able to work more shifts due to back pain. He also asserted that he would not be able to earn as much money in Mexico to support his family. During cross-examination, however, Sustaita-Cordova admitted that, despite difficulties, Ms. Palacios more recently took care of the children while he was detained for eight months, and

the children had been living exclusively with her, with the benefit of child support from him, since he moved out of the family home a few months prior to the hearing. Since moving out of the family home, Sustaita-Cordova testified that he saw Judith four days per week and communicated with her over the phone daily.

### 2.

At the August 29, 2018 hearing, Judith confirmed that she suffers from hearing loss and a speech disorder. She stated that she lives with her mother, Ms. Palacios, in Georgetown, Texas. When asked who takes her to school meetings and doctor appointments, Judith stated "my dad, sometimes my mom." Additionally, Judith testified that she loves both her mom and her dad, and that they both take good care of her.

### B.

### 1.

On October 25, 2018, the IJ ordered Sustaita-Cordova's removal, denying cancellation and voluntary departure, but the IJ did not address the motion for administrative closure. The IJ found that Sustaita-Cordova met the physical-presence requirement for cancellation, but that he failed to establish the requisite good moral character and the requisite hardship to a qualifying relative.

As to the moral-character requirement, the IJ found that Sustaita-Cordova's 2016 sexual assault charge and his failure to file taxes for numerous years in the United States outweighed the favorable factors, such as his longtime employment and care for Judith. As to the exceptional-hardship requirement, the IJ found that the medical bus could transport Judith to her medical appointments; that the record showed sufficient involvement by Ms. Palacios in Judith's school meetings; that Ms. Palacios's

earnings, combined with Judith's social security disability benefits, exceed their monthly expenses according to the testimony; and that any emotional hardship Judith might suffer does not rise to the level of "exceptional and extremely unusual."

In denying voluntary departure, the IJ applied the prior moral-character findings. The IJ ordered Sustaita-Cordova removed to Mexico without mentioning his motion for administrative closure or a continuance in the alternative.

**2.**

In his opening brief before the BIA, Sustaita-Cordova challenged the IJ's no-good-moral-character and no-hardship findings. He also underscored that the IJ did not rule on his motion for administrative closure, and argued that administrative closure—or, alternatively, remand for a continuance—is still warranted, while he awaits his U visa adjudication. Additionally, he argued that his motion to the IJ demonstrated his eligibility for a waiver of inadmissibility; that the IJ erred by not considering his eligibility; and that remand was thus appropriate for the IJ to consider his waiver eligibility in the first instance. Relying on the Supreme Court's decisions in *Niz-Chavez v. Garland*, 593 U.S. 155 (2021) and *Pereira v. Sessions*, 585 U.S. 198 (2018), Sustaita-Cordova argued for the first time that the BIA must terminate removal proceedings, "or remand to the IJ to consider the claims processing violation which has prejudiced him," because the NTA that DHS filed with the immigration court in 2017 did not specify the date or time of Sustaita-Cordova's first hearing. So, he asserted that without proper "written notice" under 8 U.S.C. § 1229a, jurisdiction never vested with the agency.

In his supplemental brief to the BIA, Sustaita-Cordova raised new arguments in support of administrative closure based on intervening caselaw in *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326 (Att'y Gen. 2021). He also

submitted, inter alia, emailed letters from himself, Jazmin, and Judith, all of which were dated around the end of May 2021 and beginning of June 2021, and none of which discussed the prior sexual assault allegation against him. He submitted a second, undated letter from Judith detailing that she "called 911 on June 28th" when she was fifteen because Ms. Palacios "hit [her]" after Judith refused to drive. According to the letter, CPS came to Sustaita-Cordova's house and Judith told them that she preferred to live with Sustaita-Cordova. Since that incident, Sustaita-Cordova's supplemental brief explained, Judith had moved in with him. He therefore urged the BIA to find that he had presented "new previously unavailable material evidence reflecting exceptional and extremely unusual hardship to [his] qualifying U.S. citizen child."

In January 2023, the BIA dismissed Sustaita-Cordova's appeal and denied his request for administrative closure. First, the BIA rejected Sustaita-Cordova's argument that proceedings should be terminated under *Niz-Chavez*, recognizing that Fifth Circuit and BIA precedent hold that the omission of time and place information from an NTA does not deprive an IJ of subject-matter jurisdiction over removal proceedings. The BIA did not address his claim-processing argument. Second, the BIA upheld the IJ's no-hardship and no-good-moral-character findings. Third, the BIA denied administrative closure pursuant to the factors identified in *Matter of Avetisyan*, 25 I. & N. Dec. 688 (B.I.A. 2012) and *Matter of W-Y-U-*, 27 I. & N. Dec. 17 (B.I.A. 2017). The BIA determined that (1) Sustaita-Cordova's decision to wait to pursue a U visa for over sixteen years after the underlying crime occurred and over eight months after he had been placed in removal proceedings demonstrated unreasonable delay and a lack of diligence, and (2) Sustaita-Cordova failed to show his request for a continuance of these proceedings was for a reasonable period of time.

In February 2023, Sustaita-Cordova timely petitioned this court for review. *See* 8 U.S.C. § 1252(b)(1).

**3.**

Several important developments occurred during the pendency of this appeal. In April 2023, Sustaita-Cordova filed a motion to reopen proceedings before the BIA, which the BIA denied in January 2024. *See Automated Case Information*, Exec. Off. for Immigr. Rev., https://acis.eoir.justice.gov/en (Sustaita-Cordova's A# is 209-341-899). In the intervening time, U.S. Citizenship and Immigration Services ("USCIS") denied Sustaita-Cordova's U visa application and his application for advance permission to enter as a nonimmigrant. In September 2023, Sustaita-Cordova was removed to Mexico.

In its January 2024 decision denying Sustaita-Cordova's motion to reopen, the BIA concluded that "the new evidence" Sustaita-Cordova presented—namely, that in September 2023, "the prosecution dismissed the sexual abuse charge against him under Tex. Penal Code § 21.02(b), because it could not prove guilt beyond a reasonable doubt"—did "not warrant reopening, especially in light of USCIS's denial of the U visa application." The BIA reasoned that, "[w]hile [Sustaita-Cordova] is free to seek reconsideration of USCIS's U visa denial, his evidence does not show that he is likely enough to succeed that reopening is warranted to terminate or administratively close his removal proceeding." So, the BIA denied Sustaita-Cordova's motion to reopen, noting that Sustaita-Cordova could "continue pursuing his U visa petition from outside the United States, even after removal."

**II.**

We have jurisdiction under 8 U.S.C. § 1252(a). We review the BIA's decision as the final order but may also "review the IJ's decision when it has

some impact on the BIA's decision, as when the BIA has adopted all or part of the IJ's reasoning." *Rodriguez Gonzalez v. Garland*, 61 F.4th 467, 469 (5th Cir. 2023) (citation omitted). We review the agency's factual findings for substantial evidence, accepting them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Garland v. Ming Dai*, 593 U.S. 357, 365 (2021). We review the BIA's decision on a request for administrative closure for abuse of discretion. *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 208-09 (5th Cir. 2017). Questions of law, including mootness, are reviewed de novo. *Fuentes-Pena v. Barr*, 917 F.3d 827, 829 (5th Cir. 2019); *Mendoza-Flores v. Rosen*, 983 F.3d 845, 847 (5th Cir. 2020).

## III.

Before reaching the merits of any of Sustaita-Cordova's claims, we must first address mootness. As the Government correctly acknowledges, Sustaita-Cordova's petition was not mooted in its entirety by his removal from the United States because "[a]n automatic period of inadmissibility is a concrete disadvantage that is imposed as a matter of law and, as such, constitutes an adverse collateral consequence." *Nkenglefac v. Garland*, 34 F.4th 422, 428 (5th Cir. 2022) (internal quotation marks and citation omitted).

However, two of Sustaita-Cordova's claims—his claims that the BIA abused its discretion by (1) denying his motion for administrative closure or a continuance and (2) ignoring his request for a remand to pursue a waiver of inadmissibility before the IJ—have been mooted by USCIS's denial of his applications for a U visa and an inadmissibility waiver. Because neither his U visa nor accompanying waiver application is still pending, "it is impossible

No. 23-60095

for this court to grant him any effectual relief." *Mendoza-Flores*, 983 F.3d at 847.[5]

## IV.

Having disposed of Sustaita-Cordova's moot claims, we turn to his cancellation-of-removal claim. To establish eligibility for cancellation of removal, a petitioner must show, inter alia, that he has "good moral character" and that his removal would result in "exceptional and extremely unusual hardship to" his qualifying U.S. citizen relative (here, Judith). 8 U.S.C. § 1229b(b)(1)(B), (D). The IJ concluded that Sustaita-Cordova was ineligible for cancellation because he had not made these showings, and the BIA agreed. On appeal, Sustaita-Cordova disputes these determinations.

This court had previously decided that, under *Patel v. Garland*, 596 U.S. 328 (2022), the agency's determination that a noncitizen is ineligible for cancellation of removal under § 1229b(b)(1)(D) "is a discretionary and authoritative decision" that "is beyond our review" under the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(i). *Castillo-Gutierrez v. Garland*, 43 F.4th 477, 481 (5th Cir. 2022) (per curiam), *abrogated by Wilkinson v. Garland*, 601 U.S. 209 (2024); *see also Carreon v. Garland*, 71 F.4th 247, 254 (5th Cir. 2023) (holding that "*Patel* bars our review of the

---

[5] The question of whether IJs have statutory authority to grant inadmissibility waivers is an open one in this circuit. Although we do not answer that question today because Sustaita-Cordova's request for a remand to pursue an inadmissibility waiver before the IJ is now moot, we note that the majority of circuits to have addressed this question have held IJs possess that statutory authority. *See, e.g., Jimenez-Rodriguez v. Garland*, 996 F.3d 190, 191–92 (4th Cir. 2021) (holding that IJs have statutory authority to grant inadmissibility waivers to U visa petitioners); *Meza Morales v. Barr*, 973 F.3d 656, 659 n.1 (7th Cir. 2020) (same); *Meridor v. U.S. Att'y Gen.*, 891 F.3d 1302, 1307 (11th Cir. 2018) (same).

'authoritative decision'" that a noncitizen "lacks good moral character" (quoting *Patel*, 596 U.S. at 329).

But as our court has already persuasively recognized, *Castillo-Gutierrez* is no longer good law. *See, e.g.*, *Saenz v. Garland*, No. 23-60416, 2024 WL 1905758, at *1 (5th Cir. May 1, 2024). In *Wilkinson v. Garland*, the Supreme Court held that "the application of the statutory 'exceptional and extremely unusual hardship' standard to a given set of facts presents a mixed question of law and fact" that is reviewable under § 1252(a)(2)(D). 601 U.S. at 221-22. Under *Patel*, we still lack "jurisdiction to review a factual question raised in an application for discretionary relief." *Id.* at 222. Accordingly, taking the "established facts" as found by the agency, we must review "deferential[ly]" the agency's determination that Sustaita-Cordova was ineligible for cancellation. *Id.* at 225.

Here, the IJ found that Sustaita-Cordova could not satisfy the exceptional-hardship requirement because (1) the medical bus could transport Judith to her medical appointments; (2) the record showed sufficient involvement by Ms. Palacios in Judith's school meetings; (3) Ms. Palacios's earnings, combined with Judith's disability benefits, exceed their monthly expenses; and (4) any emotional hardship Judith might suffer does not rise to the level of "exceptional and extremely unusual." The BIA upheld the IJ's no-hardship finding, concluding that the IJ "properly considered the relevant hardships in the aggregate."

On appeal, Sustaita-Cordova primarily takes issue with the IJ's factual findings, but those findings are unreviewable. *See Wilkinson*, 601 U.S. at 222. Because the IJ found Judith would be able to attend school and her medical appointments, receive any necessary surgeries, and would be financially cared for, we must conclude—under our "deferential" review, *id.* at 225— that the agency did not err in denying cancellation of removal based on

Sustaita-Cordova's failure to establish his removal "would result in exceptional and extremely unusual hardship" to Judith, 8 U.S.C. § 1229b(b)(1)(D). *See In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 468 (B.I.A. 2002) (holding that a noncitizen must establish hardship "that is substantially beyond that which would ordinarily be expected to result from [his] departure," though it need not be "unconscionable"). The agency's no-hardship finding is dispositive of Sustaita-Cordova's cancellation claim, so we do not reach any flaws in the agency's moral-character analysis.[6] *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam).

## V.

Finally, Sustaita-Cordova challenges the BIA's rejection of his contention that his removal proceedings should be terminated because the NTA was deficient. In his BIA brief, he argued that the NTA was insufficient to confer jurisdiction over his proceedings under *Niz-Chavez* because it did not contain a time and date for his hearing. He alternately argued that DHS's

---

[6] Because we do not reach the agency's moral-character analysis, we do not opine today on whether our jurisdictional analysis in *Carreon* remains good law after *Wilkinson*. *See* 71 F.4th at 254. However, we note that—after *Wilkinson* was decided—the Government here withdrew its jurisdictional arguments relying on our "then-controlling precedent" in *Carreon* in light of the Sixth Circuit's decision in *Hernandez v. Garland*, 59 F.4th 762 (6th Cir. 2023). In *Hernandez*, the Sixth Circuit concluded that "[n]o matter the provision in [8 U.S.C.] § 1101(f) on which the [BIA] relies, its holding that an immigrant lacks 'good moral character' resolves a mixed question" because "[t]hat type of conclusion applies a 'legal standard' (good moral character) to the historical 'facts' found by the immigration judge." *Hernandez*, 59 F.4th at 768 (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020)); *see also Lozano-Hernandez v. Garland*, No. 23-3532, 2024 WL 2768356, at *2 n.2 (6th Cir. May 30, 2024) (applying *Hernandez* post-*Wilkinson* to "the IJ's moral-character finding"). The Eighth Circuit has likewise concluded that courts have jurisdiction to review the agency's moral-character findings "because it is a matter of applying the law to the facts." *Hernandez v. Garland*, 28 F.4th 917, 921 (8th Cir. 2022).

failure to provide the required notice was a claim-processing error and that the case should be remanded to the IJ for correction of this error.

In *Pereira*, the Supreme Court held that an NTA must specify the time and place of a removal hearing to trigger the stop-time rule for cancellation of removal. 585 U.S. at 201-02. The Court further held in *Niz-Chavez* that the required information must all be provided in one document. 593 U.S. at 158-60, 171-72. This court subsequently determined that the single-document requirement for an NTA does not affect the jurisdiction of the immigration court. *Maniar v. Garland*, 998 F.3d 235, 242 & n.2 (5th Cir. 2021). To the extent Sustaita-Cordova argues otherwise, *Maniar* forecloses his argument. *See id.*

Sustaita-Cordova's alternative argument—that the allegedly defective NTA constituted a claim-processing error—fares no better. In *Matter of Fernandes*, the BIA determined that "the time and place requirement [of an NTA] is a claim-processing rule, not a jurisdictional requirement," 28 I. & N. Dec. 605, 608 (B.I.A. 2022); that an objection to a noncompliant NTA must be raised by "the closing of pleadings before the [IJ]," *id.* at 610-11; and that such an objection is "waived or forfeited if not timely raised," *id.* at 609. Because Sustaita-Cordova failed to raise an objection to the NTA prior to the close of pleadings before the IJ, he forfeited any later claim-processing challenge to the NTA. *See id.* at 608-11.

\*     \*     \*

For the foregoing reasons, we DENY the petition for review.

14